UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNEMARIE WILEY, | |
| Plaintiff/Counter-Defendant, | No. 25 CV 412 |
| v. | Judge Manish S. Shah |
| AMERICAN SOCIETY OF ANESTHESIOLOGISTS, INC., | |
| Defendant/Counter-Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff and counter-defendant Annemarie Wiley sued defendant and counter-plaintiff American Society of Anesthesiologists, Inc. for defamation. After the ASA posted a press release about the lawsuit, Wiley posted her own statement on her Instagram. The ASA filed a counterclaim for defamation. Wiley moves to strike the counterclaim, or, in the alternative, to dismiss for failure to state a claim. For the reasons discussed below, the counterclaim is dismissed.

**I.   Choice of Law**

When a federal court sits in diversity, the forum state's choice-of-law rules determine what state's law applies to the issues before it. *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022).[1] Under Illinois choice-of-law rules, the forum state's law applies unless a party shows there is an actual conflict with another state's law

---

[1] The ASA's counterclaim is a state-law defamation claim. Wiley is a citizen of California. [1] ¶ 19; [16] ¶ 6. The ASA is a citizen of New York and Illinois. [1] ¶ 20; [16] ¶ 5. The amount in controversy exceeds $75,000. [1] ¶ 21; [16] ¶¶ 56, 65. I have diversity jurisdiction under 28 U.S.C. § 1332.

or the parties agree that forum law does not apply. *Id.*; *see also Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14 (2014) (a choice-of-law analysis is only required where a party shows that a difference in law will make a difference in the outcome of the case). The parties agree that Illinois law applies to ASA's counterclaim and that California law applies to Wiley's motion to strike. There is no need for an independent choice-of-law analysis for these issues.

The parties disagree about which state's laws apply to Wiley's defenses. The ASA argues that Illinois law applies to the privileges that Wiley asserts against the counterclaim. Wiley says that California law applies.

Illinois courts use the "most significant contacts" test to resolve conflicts of law. *Cont'l Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 758–59 (7th Cir. 2020). Illinois also follows the doctrine of *depecage*, which is "the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 161 (2007). In defamation cases, it is usually the plaintiff's home state that has the "most significant relationship" because "that location is where the plaintiff suffers the most reputational harm." *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019). On the other hand, California has a greater interest in applying its law in determining whether to protect California speakers like Wiley. *See, e.g., Osundairo v. Geragos*, 447 F.Supp.3d 727, 743 (N.D. Ill. 2020) (quoting *Underground Sols., Inc. v. Palermo*, 41 F.Supp.3d 720, 723 (N.D. Ill. 2014) (applying law of speaker's domicile to anti-SLAPP defense because the "anti-SLAPP question involves whether a statement is

privileged, not whether its content is defamatory"); *Glob. Relief v. New York Times Co.*, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (Because "California has a great interest in determining how much protection to give California speakers," California law applies to defenses to defamation). California law applies to Wiley's defenses to the ASA's counterclaim.

## II. Legal Standards

In California, a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1) (California's anti-strategic lawsuit against public participation statute). The moving defendant bears the initial burden of proving the cause of action arises from protected expression. *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1009 (2021). If the defendant meets her burden, the burden shifts to the plaintiff to show a probability of prevailing on the claim—the claim has "at least minimal merit." *Id.* (internal quotation marks and citation omitted).

California's anti-SLAPP statute applies in federal diversity actions because "there is no 'direct collision' between the statute and the relevant federal rules, and the 'twin purposes of … *Erie [R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)]' favor[s] its application." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022) (quoting *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir.

1999)); *see also Gopher Media, LLC v. Melone*, __ F.4th __, 2025 WL 2858761, at *1 and n.2 (9th Cir. Oct. 9, 2025) (en banc) (declining to reconsider *Newsham*). If a defendant files an anti-SLAPP motion to strike on solely legal grounds, the analysis proceeds under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 1143. Under that standard, a complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff does not need to recite every detail related to their allegations, they must "include enough facts to present 'a story that holds together.'" *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678.

At this stage, I accept all factual allegations in the counterclaim as true and draw all reasonable inferences in the counter-plaintiff's favor. *Id.*

### III. Facts

Plaintiff and counter-defendant Annemarie Wiley was a cast member on the television show *The Real Housewives of Beverly Hills* and has appeared on several news outlets and other media platforms to discuss politics and current events. [16]

¶ 6.[2] She is a nurse anesthetist. [16] ¶ 22. During an episode of *The Real Housewives of Beverly Hills*, Wiley gave unsolicited medical advice to another cast member. [16] ¶¶ 14–18. After the episode, and during a *The Real Housewives of Beverly Hills After Show* episode, other cast members criticized Wiley for her comments and discussed whether she was misrepresenting herself as being an anesthesiologist. [16] ¶ 18. One cast member said that Wiley had introduced herself as an anesthesiologist when they first met. [16] ¶ 19. Wiley said that she never called herself an anesthesiologist and said, "you can actually say 'nurse anesthesiologist.' That is an absolutely acceptable title." [16] ¶ 23.

In an interview after the episodes aired, Wiley told the interviewer that "nurse anesthesiologists are doctors. … Ten percent of CRNAs [certified registered nurse anesthetists] are doctors. They are doctorate trained. And as of next year, every single CRNA that graduates has a doctorate degree. So we are doctors." [16] ¶ 29. Wiley herself does not hold a Doctor of Nursing Practice degree. [16] ¶ 30.

After the episode, the defendant and counter-plaintiff American Society of Anesthesiologists posted a photograph to Instagram depicting a side-by-side comparison of education and training for anesthesiologists and nurse anesthetists. [16] ¶ 36. The caption under the photo read: "The Real Housewives know a fake. Anesthesiologists are medical doctors with more than 12 years of higher education and up to 16,000 hours of clinical training. Title misappropriation has no place in

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the ASA's counterclaim, which begins on page 34 of its answer and counterclaim, [16].

health care. #RHOBH #anesthesiologist #anesthesiologists #physician." [16] ¶¶ 36–37.



In response, Wiley sued the ASA for defamation. [1]. The ASA published a press release on their website disclosing the lawsuit. [26] at 5.[3] Wiley posted a response to the ASA's statement on her Instagram. [16] ¶ 10. It reads ([16] ¶ 10):

> I have recently filed a lawsuit against the American Society of Anesthesiologists (ASA) because of their public smear campaign against me stemming from their IG post during my time as a cast member on The Real Housewives of Beverly Hills.
> I continue to experience significant harm from their false and defamatory IG post about me.
> While I have not publicly disclosed my lawsuit, I am now aware of the ASA's decision to publicize on their website my lawsuit against them.
> Let me be clear – my lawsuit is solely about the ASA's malicious, false, targeted, and defamatory statements about me. I have always proudly, publicly, and consistently stated that I am a CRNA. I have never stated that I am an anesthesiologist or a medical doctor during my time on The Real Housewives of Beverly Hills or otherwise.
>
> This is not a debate over professional titles, despite the ASA's attempts to now mischaracterize it as such. This is about holding the ASA accountable for its shameful and blatant lies.

---

[3] Wiley requests that I take judicial notice of three items: Wiley's Instagram post at issue here, the ASA's press release on its website, and an article that refers to Wiley's Instagram post. I may judicially notice a fact that is not subject to reasonable dispute because it is either "generally known within the trial court's jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The defendants have not opposed the motion. Wiley's Instagram post is included in the ASA's counterclaim. The ASA's press release and the article are publicly available. I take judicial notice of each item, not for the truth of the matters asserted in each item, but of the fact that they were published and contain the contents depicted. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 743 (7th Cir. 2016) (monitor report may be admissible to show defendants were on notice of its contents, but not for the truth of the statements it contained); *Abdin v. CBS Broad.*, 971 F.3d 57, 60 n.2 (2d Cir. 2020) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)) (emphasis in original) ("[I]t is proper to take judicial notice of the *fact* that press coverage … contained certain information, without regard to the truth of their contents.").

I trust the truth will come to light through the proper legal channels.

Defamation has no place in health care.



## IV. Analysis

### A. Minimal merit/stating a claim

For both a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a special motion to strike under Cal. Civ. P. Code § 425.16, the plaintiff must show that its complaint states a claim upon which relief may be granted. *CoreCivic, Inc.*, 46 F.4th at 1143. To state a claim for defamation under Illinois law, the ASA must allege facts showing that (1) Wiley made a false statement about the ASA; (2) Wiley made an unprivileged


publication of that statement to a third party; and (3) the publication caused damages, or the harm is obvious on its face. *Beverly v. Abbott Laby's*, 107 F.4th 737, 749 (7th Cir. 2024).

Wiley argues that the ASA has failed to state a viable claim because (1) her statement was nonactionable opinion, (2) her statement was protected by California's fair report privilege, and (3) her statement was protected by California's litigation privilege.

*1. Nonactionable Opinion*

Defamatory statements "may enjoy constitutional protection as an expression of opinion." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 849 (7th Cir. 2023) (internal quotation marks and citation omitted). Whether a statement is an opinion or assertion of fact is a question of law to be decided by the court. *Beverly*, 107 F.4th at 748–49. Courts ask whether: (1) the statement "has a precise and readily understood meaning;" (2) "the statement is factually verifiable;" and (3) the "literary or social context signals that [the statement] has factual content." *Id.* at 749 (quoting *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill.2d 558, 581 (2006)). The test is "restrictive"—"a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact." *Id.* (citing *Solaia Tech.*, 221 Ill.2d at 581). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). I cannot evaluate the defamatory nature of

9

the word or phrase without considering the context of the full statement. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1131 (7th Cir. 2022).

The ASA alleges that Wiley "published statements accusing ASA of conducting a 'smear campaign' against her and telling 'blatant lies' about her with respect to ASA's January 18, 2024 statement, posted on Instagram." [16] ¶¶ 51, 60. When read in context, however, Wiley stated she "recently filed a lawsuit against the American Society of Anesthesiologists (ASA) *because of* their public smear campaign against me stemming from their IG [Instagram] post during my time as a cast member on The Real Housewives of Beverly Hills." [16] ¶ 10 (emphasis added). In context, Wiley explained the reason she filed her lawsuit—her belief that the ASA began a smear campaign against her with their Instagram post. This is a subjective view of what happened, an interpretation of the events that led her to file suit. *Beverly*, 107 F.4th at 749. Her subjective view of why she sued the ASA is not readily verifiable. In proper context, Wiley's statement is nonactionable opinion.

Similarly, Wiley did not state outright that the ASA told "blatant lies." Instead, she wrote in her statement that the lawsuit is "not a debate about professional titles, despite the ASA's attempts to now mischaracterize it as such. This is about holding the ASA accountable for its shameful and blatant lies." [16] ¶ 10. Again, in context, Wiley explained what she believed her lawsuit to be about—a subjective opinion about why she brought claims against the ASA and her goal for the litigation (accountability). Wiley's statements were not facts but a description of her personal motive for bringing suit, which is laden with her opinion about the ASA's conduct.

10

Because Wiley's statement was nonactionable opinion, the ASA has failed to state a claim upon which relief could be granted. The counterclaim is dismissed.

### 2. Fair report privilege

Wiley's statement also falls under the California fair report privilege. The fair report privilege "confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof." *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal.App.5th 416, 431 (1st Dist. 2016), *as modified* (Jan. 10, 2017) (internal quotation marks and citation omitted); Cal. Civ. Code § 47(d)(1). This privilege is absolute. *Healthsmart Pac.*, 7 Cal.App.5th at 531. Where there is no dispute as to what happened in the judicial proceeding reported upon or as to the contents of the report, the question is one of law. *Id.* The fair report privilege protects both the news media and those who communicate information to the media. *Id.* A "judicial proceeding" includes the filing of a complaint, so a fair and true communication to the news media about the allegations in a complaint are covered by the privilege. *Id.* at 432. Courts have flexibly applied the term "public journal." *See Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F.Supp. 782, 785 (C.D. Cal. 1998) (applying privilege to statements in paid advertisement); *Colt v. Freedom Commc'ns, Inc.*, 109 Cal.App.4th 1551, 1555, 1560 (4th Dist. 2003) (applying privilege to news article and statements made in internet postings affiliated with newspaper); *Heitkoetter v. Domm*, 2024 WL 325134, at *11 (E.D. Cal. Jan. 29, 2024) (applying privilege to defendant's YouTube channel). Press releases fall within the privilege. *See Argentieri v. Zuckerberg*, 8 Cal.App.5th 768, 790 (1st

11

Dist. 2017) (attorney's email to members of the press covered); *Healthsmart*, 7 Cal.App.5th at 431–32 (attorney's statements on television and radio covered); *J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 104–05 (2d Dist. 2006) (press release with "self-promotion and puffery" covered). The ASA has not cited any cases nor argued that Wiley's post was not a communication to the media. It was made in response to the ASA's press release on its website. A news website reported Wiley's post, calling it a statement. [26] at 10. Wiley's post is a press release that falls under the privilege.

"Fair and true … does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect to what occurred in the judicial proceedings." *Id.* at 434. To be "fair and true, the report must [capture] the substance, the 'gist' or 'sting' of the subject proceedings as measured by considering the 'natural and probable effect [of the report] on the mind of the average reader.'" *Argentieri*, 8 Cal.App.5th at 787 (quoting *Braun v. Chronicle Pub. Co.*, 52 Cal.App.4th 1036, 1050 n.6 (1st Dist. 1997)) (alterations in original). There is a "critical difference between communicating to the media what is alleged in the complaint and communicating the alleged facts without reference to the complaint." *Healthsmart Pac.*, 7 Cal.App.5th at 435. The issue is "whether the average viewer or listener of the media reports would understand [Wiley's] statements as communications about [her] complaint (which would be privileged) or as facts (which would not)." *Id.* at 435–36.

12

The ASA argues that Wiley's statement that the ASA conducted a smear campaign and told blatant lies was neither fair nor accurate. As explained above, in context, Wiley's statement was not that the ASA conducted a smear campaign or published blatant lies, but rather, that that was what her lawsuit claimed. Wiley's complaint alleges that the ASA's statements were "patently false" and "fabrications" and accused the ASA of conducting a "defamation campaign." [1] ¶¶ 1, 35, 37, 43, 54. Wiley's statement uses similar language to say that the lawsuit was filed because of the "ASA's smear campaign" and "blatant lies." Looking at the whole statement, Wiley said that she filed a lawsuit and explained her reasons why in language that reflected the allegations in her complaint. Her statement captures the "gist" of the complaint, and the average reader would understand that she was describing what she alleged in her complaint. *Argentieri*, 8 Cal.App.5th at 787. Because Wiley's statement would also fall under California's fair report privilege even if the statement were not a nonactionable opinion, the counterclaim must be dismissed.

        3.      *Litigation privilege*

Wiley's statements would not fall under the litigation privilege. The litigation privilege protects a "publication or broadcast" made "[i]n any … judicial proceeding." Cal. Civ. Code § 47(b). The privilege "applies to any communication made in judicial or quasi-judicial proceedings by litigants or other participants to achieve the objects of the litigation that has some connection or logical relation to the action." *Paglia & Assocs. Constr., Inc. v. Hamilton*, 98 Cal.App.5th 318, 324 (2d Dist. 2023). The main purpose of the privilege is "to afford litigants and witnesses complete access to courts

13

without fear of later harassment by derivative tort actions." *Id.* The communication at issue "must have a substantial connection to litigation," meaning that it "must function as a useful step in the litigation process and must serve its purposes." *Id.* at 325. The litigation privilege does not extend to litigating in the press. *Id.* at 324. So it does not cover "press releases or other attempts to communicate with the public that lack any other connection to the government proceeding at issue." *Id.* at 325. And communications to nonparticipants or to people with no substantial interest in or connection to the proceeding are not privileged. *Billauer v. Escobar-Eck*, 88 Cal.App.5th 953, 965 (4th Dist. 2023).

Wiley's statement was not "substantially" connected to the litigation because it was not made in furtherance of the litigation process, as required to be covered by the privilege. *Paglia & Assocs.*, 98 Cal.App.5th at 325. Although it discussed the litigation, the statement was not the kind of communication that was a useful step in the litigation process. It was instead a press release, in which Wiley responded to the ASA's own press release and explained the suit to her fans and followers. This is not covered by the litigation privilege.

Wiley argues that her statement was not made to the general press, but her fans and followers, who "have an interest in the litigation due to their participation in Mrs. Wiley's online community and prior engagement with the parties' respective online posts that give rise to this litigation." [34] at 9. But none of Wiley's fans or followers are participants in the litigation and have no connection to the litigation. Simply being interested in a case is not *having* an interest in the case. In determining

14

mootness, for example, a party's interest in a case requires a "personal stake" in the litigation. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). California law requires that nonparties have a *substantial* interest in the proceeding. *Billauer*, 88 Cal.App.5th at 965. As the ASA points out, this generally means the nonparty is a witness or has rights that will be affected by the outcome of the litigation. *See Healy v. Tuscan Hills*, 137 Cal.App.4th 1, 5–6 (4th Dist. 2006); *Neville v. Chudacoff*, 160 Cal.App.4th 1255 (2d Dist. 2008). Wiley's fans do not have an interest in the litigation, despite being interested in it. Their rights will not be affected by the litigation, nor are they witnesses in the case. Because Wiley's post was not a useful step in the litigation process, nor was it made to a person or group with an interest in the litigation, it does not fall under the litigation privilege.

### B. Futility of amendment

"A complaint should only be dismissed at the pleading stage with prejudice if the court is '*certain*' from the facts alleged that any amendment would be futile." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025) (emphasis in original). Where a complaint for defamation challenges statements that are covered under a privilege, amendment is futile. *See Mogan v. Portfolio Media, Inc.*, 143 F.4th 790, 793 (7th Cir. 2025). Here, because Wiley's statement is nonactionable opinion and would be covered by the fair reporting privilege, any amendment would be futile, and the counterclaim is dismissed with prejudice.

Because the counterclaim is dismissed with prejudice on the grounds of privilege and nonactionable opinion, I do not reach whether Wiley's statement arose

15

from protected activity or whether the ASA adequately pleaded damages or actual malice.

### C. Extraneous statements

Wiley moves to strike the entire counterclaim because it is repetitious and covers the same issue raised in Wiley's complaint, just from the ASA's perspective. Because the counterclaim is dismissed for failure to state a claim, the motion to strike is denied as moot.

Wiley also seeks to strike paragraphs 34 and 35 of the ASA's answer for including screenshots of Instagram comments. I see no reason to strike the answer at this stage. Motions to strike are disfavored and unless the movant demonstrates some prejudice from the allegations in a pleading, the ordinary tools of case management suffice to protect the movant from unnecessary or irrelevant allegations. *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989). The motion to strike the cited portions of the ASA's answer is denied.

## IV. Conclusion

Wiley's motion to dismiss for failure to state a claim, [30], is granted and the motion to strike is denied. The American Society of Anesthesiologists' counterclaim is dismissed with prejudice.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: October 21, 2025